IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Eugene Gary, | ) | Case No. 8:14-2551-TMC-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Leroy Cartledge, | ) | |
| | ) | |
| Respondent, | ) | |
| ———————————————————— | ) | |

This matter is before the Court on Respondent's motion for summary judgment [Doc. 23] and Petitioner's motion to expand the record [Doc. 45]. Petitioner is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on June 19, 2014.[1] [Doc. 1.] On November 19, 2014, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 22, 23.] On November 20, 2014, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 25.] Respondent filed additional attachments to the main document on November 20, 2014. [Doc. 27.] On March 2, 2015, Petitioner filed a response in

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Accordingly, this action was filed on June 19, 2014. [Doc. 1-4 at 2 (envelope marked as received by prison mailroom on June 19, 2014).]

opposition to the motion for summary judgment [Doc. 43] and a motion to expand the record [Doc. 45]. Respondent filed a response in opposition to the motion to expand the record on March 19, 2015. [Doc. 46.]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and Petitioner's motion to expand the record be denied.

## BACKGROUND

Petitioner is incarcerated in the McCormick Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Richland County. [Doc. 1 at 1–2.] Petitioner was indicted in December 1997 for murder, armed robbery, robbery, and possession of a knife during the commission of a violent crime. [App. 2752–57.[2]] On August 23, 1999, represented by Douglas S. Strickler ("Strickler"), I.S. Leevy Johnson, and Tommy Evans, Petitioner proceeded to trial. [App. 1–2590.] At the conclusion of the trial, the jury returned a verdict of guilty on all charges. [App. 2586–87.] Petitioner was sentenced to a term of confinement of his natural life for the murder charge, 30 years for the armed robbery charge, and five years for the possession of a knife during the commission of a violent crime charge, all to run consecutively. [Doc. 22-10.]

---

[2]The Appendix can be found at Docket Entry Number 22-1 through 22-9.

2

**Direct Appeal**

Petitioner appealed his conviction. Joseph L. Savitz of the South Carolina Office of

Appellate Defense filed an *Anders*[3] brief on Petitioner's behalf in the South Carolina Court

of Appeals, dated February 26, 2002, raising the following issue:

> The judge erred by allowing into evidence a pair of
> shorts seized from appellant's residence which were shown to
> be stained with the victim's blood, because this evidence was
> the fruit of a warrantless arrest which violated the Fourth
> Amendment.

[App. 2591–601.] At the same time he filed the *Anders* brief, Savitz submitted a petition

to be relieved as counsel. [App. 2601.] Petitioner filed a pro se brief, dated February 26,

2002, raising the following issues, quoted substantially verbatim:

> I.    The trial court erred by refusing a directed verdict of
>       acquittal on the charges of murder, armed robbery, and
>       possession of a knife during the commission of a violent
>       crime, since the state failed to introduce any evidence
>       placing the appellant at the scene during the
>       commission of the crime and the state failed to
>       introduce any substantial circumstantial evidence which
>       reasonably tended to prove the guilt of the appellant.
>
> II.   The trial court clearly erred by not suppressing illegally
>       seized evidence in clear violation of appellant's 4th
>       Amendment and South Carolina Art. 1 §10.  Which
>       guarantees him the right of privacy.

[App. 2602–17.] Petitioner filed a motion for leave to supplement the pro se brief of

appellant, dated August 7, 2002, in which Petitioner raised the following issues, quoted

substantially verbatim:

---

[3]A brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively
concedes the appeal lacks a meritorious claim.

Issue-I

Court erred in denying motion for mistrial and abused his discretion due to the fact that the states witness testimony was so prejudicial that it was impossible for appellant to receive a fair and impartial trial.

Issue-II

The court erred when it confused the jury on its reasonable doubt instruction to the extent that a reasonable juror in interpreting the charge as a whole allowed the finding of guilt to be based upon degree of proof below that which is required by the due process clause and the Fourteenth Amendment of the United State Constitution.

Issue-III

Trial judge erred in alternating the reasonable doubt charge given the jury after defendant had given his closing argument in reliance upon the original charge.

[Doc. 22-14.]  On February 4, 2003, the South Carolina Court of Appeals dismissed Petitioner's appeal and granted counsel's motion to be relieved.  [App. 2618–19.]  Petitioner filed a pro se petition for rehearing, dated March 4, 2003 [Doc. 27], which was denied [Doc. 25-15].  Remittitur was issued on May 13, 2003.  [Doc. 22-16.]

**PCR Application**

On April 14, 2003, Petitioner filed a pro se application for post-conviction relief ("PCR"), in which he alleged he was being held in custody unlawfully based on the following grounds:

(a)     Ineffective Assistance of Counsel.

(b)     Ineffective Assistance of Appellate Counsel.

(c)     Denial of Due Process.

4

[App. 2621.] In support of his grounds for relief, Petitioner provided the following facts, quoted substantially verbatim:

(a)     See attached

(b)     See attached

(c)     See attached

[*Id.*] In his attachment in support of his grounds for relief, Petitioner provided the following, quoted substantially verbatim:

***

1.     Counsel was ineffective in failing to request a <u>Batson</u> hearing due to the solicitor striking of black jurors at trial

***

2.     Counsel was ineffective in failing to object to the trial court's dismissal of a potential juror.

***

3.     Counsel was ineffective in failing to object to hearsay testimony of Kendall Adams.

***

4.     Counsel was ineffective in failing to articulate a valid Fourth Amendment claim regarding the search and seizure of applicant's room and the admission of 'bloody shorts' allegedly obtained during the search.

***

5.     Counsel was ineffective in failing to object to the trial courts dismissal of venirperson(s).

***

5

6.    Counsel was ineffective in failing to object and request instructions regarding the impeachment testimony of Khadijah Shabazz.

*** 

7.    Counsel was ineffective in failing to object to the burden shifting malice instruction.

*** 

8.    Counsel was ineffective in failing to request a jury instruction regarding 'actual process' requiring the State to prove 'presence' beyond a reasonable doubt.

*** 

9.    Counsel was ineffective in failing to object to the trial courts failure to instruct the jury upon receiving jurys' note requesting applicable law of 'accomplice liability.'

*** 

10.    Counsel was ineffective in failing to object to trial courts prejudicial reasonable doubt instruction.

*** 

11.    Counsel was ineffective in failing to object to the trial court's refusal to allow counsel to argue that Dock Miles was the actual perp[e]trator of the alleged crimes (limiting closing argument).

*** 

12.    <u>Appellate Counsel</u> was ineffective in failing to raise trial court's error in failing to grant directed verdict.

*** 

13.    <u>Appellate Counsel</u> was ineffective in failing to raise issue regarding the trial court's error in failing to grant mistrial due to the prejudicial statements of (Ciciley Holmes).

6

\*\*\*

14.  <u>Appellate Counsel</u> was ineffective in failing to raise trial court's error in not suppressing introduction of shorts into evidence.

\*\*\*

15.  <u>Appellate Counsel</u> was ineffective in failing to raise issue regarding trial court's error in failing to instruct applicable law regarding jury note.

\*\*\*

[App. 2625–39.]  The State filed a return, dated June 7, 2004.  [App. 2640–45.]

A hearing was held on November 17, 2005, at which Petitioner was represented by Charlie J. Johnson, Jr.  [App. 2646–713.]  At the hearing, Petitioner submitted an amended memorandum in support of his PCR application raising the following issues, quoted substantially verbatim:

\*\*\*

Ineffective Assistance of Trial Counsel

Issue-1-    Counsel was ineffective for failing to object to ex-parte communication with jury

Issue-2-    Counsel was ineffective for failing to properly preserve contents of jury note on record for appellate review

Issue-3-    Counsel was ineffective for failing to object to the non-presence of the applicant during the reading of the note

Issue-4-    Counsel was ineffective for failing to object to shackling of applicant during trial

Issue-5-    Counsel was ineffective for failing to request a jury instruction regarding 'actual presence'

7

requiring the state to prove presence beyond a reasonable doubt

Issue-6-    Counsel was ineffective for failing to inform applicant of his right to allocution

Issue-7-    Counsel was ineffective for failing to object to the burden-shifting malice charge instruction

\*\*\*

Ineffective Assistance of Appellate Counsel

Issue-1-    Appellate was ineffective for failing to raise trial courts prejudicial altering of reasonable doubt charge to the jury

Issue-2-    Appellate counsel was ineffective for failing to raise trial courts error to grant directed verdict

Issue-3-    Appellate counsel was ineffective for failing to raise issue regarding trial courts error in failing to grant mistrial due to the prejudicial statements of Cicely Holmes

Issue-4-    Appellate counsel was ineffective for failing to raise a meritorious argument as to the introduction of evidence of the knife in the applicants trial

Issue-5-    Denial of due process

[App. 2715–37 (citations omitted).]  On January 28, 2011, the PCR court filed an order vacating the sentence for possession of a knife during the commission of a violent crime and denying and dismissing the PCR application with prejudice as it related to the remaining charges.  [App. 2738–51.]

8

A notice of appeal was timely filed. Tristan M. Shaffer of the South Carolina Commission on Indigent Defense filed a *Johnson*[4] petition for writ of certiorari on Petitioner's behalf in the Supreme Court of South Carolina, dated September 8, 2011. [Doc. 22-18.] The petition asserted the following as the sole issue presented:

> Was Appellate counsel ineffective for failing to brief the reasonable doubt issue raised by trial counsel?

[*Id.* at 3.] At the same time he filed the *Johnson* petition, Shaffer submitted a petition to be relieved as counsel. [*Id.* at 9.] On September 12, 2011, the Clerk of the Supreme Court of South Carolina advised Petitioner of his right to file a response. [Doc. 22-19.] Petitioner filed a pro se petition, dated October 16, 2011, alleging the following issues, quoted substantially verbatim:

### ISSUE (A)

> PCR Appellate Counsel is ineffective for not raising meritorious issues before the this Court, and as a result Petitioner is being denied his one and only PCR appeal as a matter of right?

### ISSUE (B)

> Did the PCR Court err in failing to find counsel ineffective for failing to object to the trial court's malice instructions that unconstitutionally shifted the burden of proof?

### ISSUE (C)

> Did the PCR Court err in failing to find counsel ineffective for failing to object when Petitioner was not present for the reading of the note, that thus denied Petitioner his right to be present at a very critical stage of the proceedings; and

---

[4]A *Johnson* petition is the state PCR appeal analogue to an *Anders* brief and effectively concedes the appeal lacks a meritorious claim. *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

9

the prejudice here is magnified since the note was a question from the jury directly to the trial court asking whether or not Petitioner was in fact "guilty" and the note was ultimately lost and the contents of the trial court's "answer" is not supported by the record in order to dismiss any actual prejudice?

[Doc. 22-21.]  The petition was transferred to the South Carolina Court of Appeals.  [Doc. 22-22.]  The South Carolina Court of Appeals denied the petition and granted counsel's request to withdraw on January 23, 2014 [Doc. 22-23], and remittitur was issued on February 10, 2014 [Doc. 22-24].

**Petition for Writ of Habeas Corpus**

As previously stated, Petitioner filed the Petition on June 19, 2014.  [Doc. 1.]  In his Petition, Petitioner raises the following grounds for relief, quoted substantially verbatim:

**Ground One**:        See Attached Sheets

*Supporting Facts*:    [Left Blank]

**Ground Two**:        See Attached Sheets

*Supporting Facts*:    See Attached Sheets

**Ground Three:**      See Attached Sheets

*Supporting Facts:*    See Attached Sheets

[*Id.* at 8–9.][5]  Petitioner included a memorandum in support of his Petition, which asserts the following issues and supporting facts, quoted substantially verbatim:

Ground One:        THE JUDGE ERRED BY ALLOWING INTO EVIDENCE A PAIR OF SHORTS SEIZED FROM PETITIONERS RESIDENCE WHICH WERE SHOWN TO BE STAINED WITH THE VICTIMS

---

[5]Petitioner attached another Petition; however, that document does not include any additional arguments.  [*See* Doc. 1-5.]

BLOOD, BECAUSE THIS EVIDENCE WAS THE FRUIT OF A WARRANTLESS ARREST WHICH VIOLATED THE FOURTH AMENDMENT

In a case comprised entirely of circumstantial evidence, the States most significant piece of evidence was a pair of shorts seized from a closet in Eugene Gary's apartment. They linked Gary to the murder of Liela Rios because they were stained with her blood.

At the start of trial, defense counsel moved to suppress the shorts from evidence because they were the fruit of an unlawful arrest. Acting on a tip from Gary's room[m]ate, Dock Miles, the police had entered Gary's bedroom without a warrant and placed him under arrest.

Miles had told the police shortly before they arrested Gary the "[h]e believed that his room[m]ate [Gary] was responsible for the murder that occurred the previous evening, that they had been traveling around . . . . trying to exchange bloody money for money that didn't have any on it." Miles did not mention anything about bloody clothing in Gary's closet.

The investigating officers decided to get a search warrant once Gary had been placed under arrest and removed fro[m] the house. The affidavit to that warrant contended that Dock [M]iles had observed Gary "with bloody clothes and money at this location." [D]efense counsel pointed out that the information about the bloody clothes had to have come from the police themselves. The judge nevertheless denied the Motion to Suppress and allowed the incriminating shorts into evidence.

\*\*\*

Here there were no exigent circumstances, as Dock Miles had informed the that "Mr. Gary was in the apartment and that he was asleep." The warrantless arrest was therefore, improper under Payton.

Moreover, the bloody shorts seized form Gary's closet were the fruit of that unlawful arrest. The search warrant for "bloody clothes" had to have been based on information provided by the officers who conducted the illegal arrest.

Accordingly, the Judge should have suppressed the pair of shorts from evidence. This error could not have been harmless, because the case against Petitioner was entirely circumstantial and the shorts were the key piece of circumstantial evidence against him. Petitioner further argues not only was the State Courts ruling contrary to clearly established federal laws, they were also objectively unreasonable regarding the facts of his case.

\*\*\*

The State contends that a pair of shorts was recovered in this case. However, there was never a search warrant, any exigent circumstances, nor "hot pursuit", nor any consent ever given by the Petitioner in this case to search his bedroom. The mere suspicion of an officer will not support finding of probable cause and consent to search, by itself is insufficient to purge the taint of a previous unlawful search and seizure.

\*\*\*

In this case, the judge clearly erred by not suppressing the illegally seized evidence in clear violation of the Petitioners 4th Amendment and South Carolina Art. 1§10, which guarantees him the right to privacy. At the start of the trial, defense attorney moved to suppress the shorts from evidence because they were the Fruit of an unlawful and warrantless arrest. Acting on a tip form Gary's roo[m]mate, Dock Miles, the police had entered Gary's bedroom without a warrant and placed him under arrest. Miles had told the police shortly before they had arrested Gary that "[h]e believed that his roo[m]mate [Gary] was responsible for the murder that occurred the previous evening."

The investigating officers decided to get a search warrant once Gary had been placed under arrest and removed from the house. [T]he affidavit to that warrant contended that Dock Miles had observed Gary "with bloody clothes and money at this location." Defense counsel pointed out that the information about bloody the bloody clothes had to have come from the police themselves. The judge nevertheless denied the Motion to Sup[p]ress and allowed the incriminating shorts into-evidence. . . . Here, there were no exigent circumstances, as Dock Miles had informed the police that "Mr. Gary was in the apartment and that he was asleep." The warrantless arrest

12

was therefore, improper under <u>Payton</u>.  Moreover, the bloody shorts seized from Gary's apartment were the fruit of that unlawful arrest.

Ground Two:          THE TRIAL COURT ERRED BY REFUSING A DIRECT VERDICT OF ACQUITTAL ON THE CHARGES OF MURDER, ARMED ROBBERY, AND POSS. OF A KNIFE DURING THE COMMISSION OF A VIOLENT CRIME, SINCE THE STATE FAILED TO INTRODUCE ANY EVIDENCE PLACING PETITIONER AT THE SCENE DURING THE COMMISSION OF THE CRIME AND THE STATE FAILED TO INTRODUCE ANY SUBSTANTIAL CIRCUMSTANTIAL EVIDENCE WHICH REASONABLY TENDED TO PROVE THE GUILT OF PETITIONER

Petitioner argues that the State Courts rulings was contrary to clearly established federal laws.  Which was also objectively unreasonable regarding the facts of his case.

The State did not present any evidence the Petitioner was at the scene during the murder of Mrs. Rios; neither Petitioner committed armed robbery and was in possession of any weapons.  [A] trial judge must submit the case to the jury if there's any "substantial evidence which reasonably tends to prove the guilt of the accused or from which his guilt may be fairly and logically deduced."  The judge shouldn't have refused the Petitioners Motion for a Directed Verdict, where the "evidence merely raises a suspicion that the accused is guilty." In addition, the proof sufficient for conviction must not be "obtained by piling inference upon inference."

Here, discussed below in detail, the evidence presented does not prove Petitioners guilt and such guilt could not be fairly and logically deduced from the evidence submitted. The evidence the jury was allowed to consider only raises a suspicion of Petitioners guilt.

In reviewing the judges denial of defendant's motion to direct the verdict, the court must look at the evidence in the light most favorable to the State.  Ignoring the incredulity and

13

equivocation of some of the State's witnesses still failed to show any elements of the crime for which Petitioner was convicted.

In her written statements to police, most of which was inconsistent to her testimony at trial, Khadijah Shabazz had testified that she picked up Petitioner on the evening of July 2, 1997. In Ms. Shabazz's statement to the police, there was no mention of Petitioner having in his possession a "Vcr, a bag, or knapsack," placing it in her trunk. However, during direct-examination, Ms. Shabazz said the Petitioner, 'Had a vcr and he had a . . . bag, a knapsack."

The State contends that a pair of tennis shoes found in the trunk of Ms. Shabazz's car belonged to Petitioner. Ms. Shabazz admitted that she didn't know who's tennis shoes they were, and did not see or know who put them in there. According to expert testimony, there was nothing associating the tennis shoes to the Petitioner. In a case comprised entirely of circumstantial evidence, the States most significant piece of circumstantial evidence was a pair of shorts allegedly seized from the Petitioners closet. Investigator Hinson testified that Chief Sealy found the shorts in the closet. However, Chief Sealy testified that he didn't find any bloody clothing in Petitioners room at all.

He also admits that he didn't find anything connecting the petitioner to the shorts. There was no  testimony that on the night of the murder, Petitioner was tennis shoes or a pair of black shorts. [A]ccording to testimony, approximately $1300 was taken during the robbery, but less than $100 was recovered. [T]he bloody money Agent Lambert received and tested matched the victim's blood type, but had excluded the Petitioners blood type as a match. Agent Lambert further testified that none of his testings put those black shorts on Petitioner.

No physical evidence tied Petitioner to the crimes. The Petitioner's fingerprints were not found to be associated with the crime. [T]here were no witnesses placing Petitioner at the scene during the commission of the crime. There was not any substantial evidence of Petitioner's involvement. there was no murder weapon recovered. In light of the evidence before him, the judge should have directed a verdict for the Petitioner.

14

The trial Court should grant a directed verdict motion when the evidence "merely raises a suspicion that accused is guilty."

\*\*\*

By the same token, the State failed to, and was unable to place the Petitioner at the scene during the crime. As in <u>Martin</u>, the evidence in this case only gives rise to mere suspicion and is not enough to support a conviction.

\*\*\*

In that case, as in this instant case, the State failed to present any evidence placing Petitioner at the scene of the murder, experts could not definitely testify that footprint's, if any, at the scene was made by shoes purported to belong to Petitioner. Fingerprint found on cashiers till clearly was not Petitioner's, and shoes and black shorts presented as evidence were not identified by any witness who had seen Petitioner wearing the shoes or black shorts. That, combined with other tenuous links in this case, similarly, cannot sustain Petitioner's conviction.

There were no eyewitnesses, no murder weapon, no fingerprints linking Petitioner to the crime, and no statements made after the crime about Petitioner's involvement. Petitioner submits that his conviction was based on insufficient evidence upon which his guilt could not have been inferred without "bridging an evidentiary gap with rank speculation."

Petitioner further argues that a[] rational trier of facts could not have found proof of his guilt beyond a reasonable doubt.

Petitioner strongly contends that he is entitled to relief, where he has shown clear and convincing (evidence) proof that the State Courts factual findings were not correct.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Ground Three:     TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE BURDEN-SHIFTING MALICE INSTRUCTION

15

Petitioner argues that the State Courts rulings was contrary to clearly established federal laws.

Petitioner raised the issue that he was denied the effective assistance of counsel when counsel failed to object to the unconstitutional burden shifting jury instructions that denied him his right to a fair trial under the Fourteenth Amendment's Due Process Clause.  During Petitioner's trial the trial judge gave the following jury instructions, as was recorded:

But ladies and gentlemen, malice may also be implied from the wilful, deliberate, and intentional, doing of an unlawful act without just cause or excuse or again, as I say, from the use of a deadly weapon.

In it's popular sense, the term malice conveys the meaning hatred, ill-will, or hostility toward another. But in it's legal sense, however, it's not employed in the description of murder -- as it is employed in the description of murder, it does not necessarily import malignant reckless or the lives and safety of others or the condition of mind which shows a heart regardless of social duty and fatally bent on mischief.

In other words, a malicious killing is where the act is done without legal justification, excuse, or extenuation, and malice has been frequently-- and malice has been frequently substantially so defined as consisting of the intentional doing of a wrongful act toward another without legal justification or excuse.

A stringent review of the record reveals two erroneous charges regarding implied malice.  First, the jury was instructed that "malice may be implied from the use of a deadly weapon." Secondly, the jury was instructed malice may also be implied from the willful, deliberate, and intentional doing of an unlawful act without just cause or excuse or again as I say, from the use of a deadly weapon."

***

16

The instructions given in the instant case informed the jury that if they could not conclude malice from Petitioner doing an unlawful act, then if a deadly weapon was involved, malice was to be implied.  Petitioner suggests that the jury could have reasonably interpreted this as a mandatory presumption. The ma[li]ce instructions given by the trial court directed a verdict for the State and gave the State the benefit of reasonable doubt. . . .

Here there is a reasonable probability that, if counsel would have objected there is a reasonable probability the outcome of the proceedings would have been different.

The PCR Court's Order failed to address that Mr. Strickler testified that he would assume that the notation would indicate that Judge Shuler's charge [was arguably] at odds with the charge contained in Elmore, and that's what he (Strickler) wanted to bring to the Court's attention.  Further, on cross-examination Strickler testified that it shows that the Elmore charge was "needed".  It indicates that at the time he (Strickler) thought there was a problem with the charge Judge Shuler gave on express and implied malice.

The State Courts erred in not finding counsel ineffective for failing to object to the unconstitutional burden shifting jury instructions. As a result, Petitioner was denied his Sixth amendment guarantee to effective assistance of counsel and Fourteenth right to fair trial.

Petitioner further argue that in his case at bar, fair-minded jurists would agree that the State Courts decision was incorrect.  Where the issue had a substantial and injurious effect and influence in determini[n]g[ ]the jury's verdic[t], the Petitioner's conviction cannot stand.

Ground Four:    THE STATE COURT ERRED IN FAILING TO FIND COUNSEL INEFFECTIVE FOR FAILING TO OBJECT WHEN PETITIONER WAS NOT PRESENT FOR THE READING OF THE NOTE; THAT THUS DENIED PETITIONER HIS RIGHT TO BE PRESENT AT A VERY CRITICAL STAGE OF THE PROCEEDINGS; AND THE PREJUDICE HERE IS MAGNIFIED SINCE THE NOTE WAS A QUESTION

17

FROM THE JURY DIRECTLY TO THE TRIAL COURT ASKING WHETHER OR NOT PETITIONER WAS IN FACT "GUILTY" AND THE NOTE WAS ULTIMATELY LOST AND THE CONTENTS OF THE TRIAL COURT'S ANSWER IS NOT SUPPORTED BY THE RECORD IN ORDER TO DISMISS ANY ACTUAL PREJUDICE

The State Court erred in failing to find counsel ineffective and the Order is inconsistent with the Actual Testimony given during the PCR hearing and the Order is further not supported by the record.

The Order specifically states:

(3)  Applicant claims counsel was ineffective for failing to object when he was not present at the reading of the note from the jury.  Counsel testified that the note was discussed in the judge's chambers in the presence of all the attorneys. according to counsel, it was not unusual to consider the jury notes in this manner. Applicant's presence was not required. Counsel's performance was in the range of competence required for criminal practice. Counsel was not ineffective on this allegation.

During the PCR hearing Counsel testified that "he didn't have any independent recollection", but he was in court for the statement made on the record. Counsel testified that:

"Whether it was a note sent to Judge Shuler which he responded to prior to bringing it to our attention or whether he met with us in chambers and brought it to our attention. "I don't remember that."

As can be seen in the above, the PCR Court's Order runs afoul with inconsistencies with the actual testimony given during the PCR hearing.  Counsel was further questioned by the State and was asked that "it's alleged that the jury sent a note to the judge inquiring as -- alleges as to whether or not the applicant is guilty.  However, there's also been some allegation

18

that the note as far as any record of that note has not been preserved: in other words, that note did not survive the trial. Do you recall anything having to do with the preservation of that note?" Counsel in response clearly responded ". . . . independently recall it, No." Counsel did testify that at the time the note came out, <u>we didn't get on the record about it</u> or there would be something else in the transcript reflecting it.

During cross-examination counsel was questioned that apparently the note was never found and there's no record of the note ever being placed into the record, that being the note was essentially lost and counsel candidly agreed. Counsel was questioned as to why Petitioner was not present during the reading of the note. Counsel said his impression is that the first mention of the note in the transcript is the portion that had been read during the PCR hearing and if that's the case, it must have been that it was dealt with back in chambers by Judge Shuler and the attorneys.

Here, the counsel has not testified to his inaction being any type of trial strategy, nor concerns with Petitioner's presence during the taking, reading or preserving the note. The PCR Court's Order would suggest that the note was discussed in chambers outside the presence of Petitioner. Counsel also testified he wasn't sure [if] "it was a note sent to Judge Shuler <u>which he responded to prior t</u>o bringing it to the attorneys attention <u>or</u> whether he met with us in chambers. I don't remember that.["] [F]urther, counsel testified he did not have any independent recollections of the contents of the note.

Petitioner avers that the PCR Judge's findings are not supported by the record. Petitioner further asserts that the trial judge's actions and counsel's inactions cannot be ignored and constituted as harmless error because the communications did not involve "house keeping" matters, but instead were directed at "fundamental issues regarding Petitioner's guilt or innocence.

Instead the judge's comments touched on the manner; nature and quality of deliberations, and clearly must have affected the verdict. Without the actual contents of the note, there is simply no way of knowing for sure the contents of the note or the manner in which the judge handled the jury's question. Petitioner was not present for the reading of the note, nor did Petitioner have any information regarding the note

19

until after being found guilty, sentenced to prison and then provided with a copy of the trial transcripts during direct appeal, was the first time Petitioner was even made aware of any note from the Jury.

In the instant matter the issue directly touched on whether the jury had concluded that Petitioner was ultimately guilty. Such as in the case at hand it is difficult to tell whether the error has injured the Petitioner, and the error cannot be considered harmless. Sometimes, deprivations of such right to counsel are in this category. While the right to see a note from the jurors and comment on the response may not be substantive, the lower Courts in Rushen v. Spain, 464 U. S. 114, 104 S.Ct. 453 (1983), thought that the absence of a contemporaneous record made a harmless error inquiry impossible. However, the right to be present is a substantive one.

***

. . . Petitioner was entitled to be present in the courtroom when the additional instructions were given to the jury by the Court. He had the right to see and observe the manner in which the proceedings were being conducted and to consult with his counsel. He the Petitioner been present, he could have objected to any part of the instructions and the judge would have had the opportunity of correcting the instructions is he deemed it advisable to do so. And the right to be present may be waived. However, in this instant matter the record is completely void of any such waiver. Again, it should be noted that during the entire time the inquiry regarding the note, Petitioner was not made aware of any note until after actually reading the trial transcripts for the first time in prison.

The presence of a defendant's attorney when further instructions were given to the jury after their retirement for deliberation does not waive defendant's right to be present.

***

Counsel himself (Strickler) testified he was not aware of the actual contents of the note, nor does he have any recollection of whether or not the judge simply answered the note prior to even informing counsels of the existence of the

note.  The error cannot be deemed harmless and the State Court erred in failing to find Counsel ineffective.  The deficient performance here is easily seen since counsel failed to have Petitioner present during critical stages of the proceeding, and prejudice incurred is easily seen since the note and the contents of the note is forever lost.  Throughout the PCR hearing, counsel testified completely inconsistent with any memory or recollection of the note.

The record is devoid of the actual contents of the note and no one can say for sure Just exactly how or when Judge Shuler answered the note.  With the record being void of this critical information, it cannot be said this error did not contribute to the verdict.

\*\*\*

INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

\*\*\*

Ground Five:          APPELLATE   COUNSEL   WAS INEFFECTIVE FOR FAILING TO BRIEF THE   REASONABLE   DOUBT   ISSUE RAISED BY TRIAL COUNSEL

Prior to closing arguments, the Trial Court informed the attorneys he would charge reasonable doubt from <u>Victor v. Nebraska</u>. . . .  The Trial Court in Petitioners trial stated, "I charge <u>Victor versus Nebraska</u> reasonable doubt charge".  Trial Counsel reasonably believed that the Trial Court had intended to charge the reasonable doubt instruction that was affirmed by the majority in <u>Victor</u>.

Therefore, Trial Counsel's argument was tailored and structured to such an instruction, to include the language "hesitate to act".  Petitioner's Trial Counsel explained to the jury that:

" A reasonable doubt is that sort of doubt that causes you "<u>to hesitate</u>", that causes you to pause, to say, "Look, something ain't right. Something is rotten in the cotton.  Things just aren't being put together.["]   That's what a reasonable doubt is".

21

> Petitioner's Defense Counsel requested that the Court charge Reasonable Doubt under <u>Manning v. State</u> . . . .
>
> ***
>
> As in this instant case, refusing to give the requested charge, was error, and had Trial Court given the requested charge even under <u>Victor v. Nebraska</u>, containing the "hesitate to act" language, there's a strong probability the outcome of the trial would have been different, due to fact that the State's case against Petitioner was entirely circumstantial.
>
> Ground Six:    PETITIONERS    PCR    COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE A RULE 59(E)    THAT    WAS    REQUESTED    BY    THE PETITIONER IN THE INSTANT CASE

[Doc. 1-1 (some alterations in original) (emphases in original) (citations omitted).]

As stated, on November 19, 2014, Respondent filed a motion for summary judgment [Doc. 23] and filed an additional attachment to the main document on November 20, 2014 [Doc. 27].  On March 2, 2015, Petitioner filed a response in opposition.  [Doc. 43.]

Also on March 2, 2015, Petitioner filed a motion to expand the record.  [Doc. 45.] Respondent filed a response in opposition to the motion to expand the record on March 19, 2015.  [Doc. 46.]  Accordingly, the motions are ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under

22

this less stringent standard, however, the pro se petition still may be subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the

allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56© has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)     (I) there is an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the Supreme Court of South Carolina. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[6] Further, strict time deadlines govern direct appeal and the filing

_____

[6]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant

of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168, 1173 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.  *See State v. McKennedy*, 559 S.E.2d 850, 854 (S.C. 2002) (reiterating that discretionary review by the Supreme Court of South Carolina is not required to exhaust available state court remedies: "[South Carolina] has identified the petition for discretionary review to [the Supreme Court of South Carolina] in criminal and post-conviction cases as *outside* South Carolina's standard review process. In [the Supreme Court of South Carolina's] 1990 order, th[e] Court stated that petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." (emphasis in original) (citing *In re*

---

to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

*Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

### Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See id.*  Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.  *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time.  *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991).  Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court.  S.C. App. Ct. R. 203(d)(3), 243.  If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995).  As the United States Supreme Court explained:

29

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim.  *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).  When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim.  *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).  Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim.  *Wainwright*, 433 U.S. at 87.  In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply.  *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96.  A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel.  *Id.* at 487–89; *Reed*, 468 U.S. at 16.  Absent a showing of "cause," the court is not required to consider "actual prejudice."  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default.  *Carrier*, 477 U.S. at 492.  To show actual prejudice, the petitioner must demonstrate more than plain error.  *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice.  To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent.  *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent").  Actual innocence is defined as factual innocence, not legal innocence.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  To meet this actual innocence standard, the petitioner's case must be truly extraordinary.  *Carrier*, 477 U.S. at 496.

31

## DISCUSSION

**Non-Cognizable Claims**

### *Ground One*

Petitioner's collateral challenge to the admission of a pair of shorts found in his apartment and stained with the victim's blood is not cognizable. Where a state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. *Stone v. Powell*, 428 U.S. 465, 494 (1976). In further defining this rule, the Fourth Circuit Court of Appeals held in *Doleman v. Muncy*, 579 F.2d 1258 (4th Cir. 1978), that the *Stone* requirement of an opportunity for full and fair litigation of a Fourth Amendment claim is met when state procedures provide a meaningful vehicle for a prisoner to raise a Fourth Amendment claim. In *Doleman*, the requirement was met because the prisoner had an opportunity to present his Fourth Amendment claim through a motion to suppress at his state criminal trial, and through an assignment of error on appeal once the motion was denied. *Id.* at 1265.

Here, at trial Petitioner moved to suppress the admission of the shorts, and any other evidence recovered as a result of the search warrant, and a hearing was held during his state criminal trial. [App. 1257–304.] This issue was also raised in Petitioner's direct appeal. [App. 2591–601.] Thus, Petitioner was afforded the same state procedural protections that constituted a full and fair opportunity to litigate a Fourth Amendment claim as the prisoner in *Doleman*. Accordingly, federal habeas review is not  available on this ground.

### *Ground Six*

In Ground Six, Petitioner raises claims of ineffective assistance of PCR counsel. [Doc. 1-1 at 28.]   However, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."   28 U.S.C. § 2254(I); *see also Martinez v. Ryan*,—U.S.—, 132 S.Ct. 1309, 1315, 1320 (2012) (stating that, "while § 2254(I) precludes [a petitioner] from relying on the ineffectiveness of his postconviction attorney as a 'ground for relief,' it does not stop [a petitioner] from using it to establish 'cause'").   Therefore, Petitioner is not entitled to federal habeas relief as to Ground Six because it is not a cognizable federal habeas claim.

**Merits of Remaining Claims**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2).   The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief.   *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning.").   The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this

Court and nevertheless arrives at a result different from our
precedent.

*Id.* at 405–06. On the other hand, a state court decision is an unreasonable application of
Supreme Court precedent when the decision "correctly identifies the governing legal rule
but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see
also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what
arguments or theories supported or, as here, could have supported, the state court's
decision; and then it must ask whether it is possible fairminded jurists could disagree that
those arguments or theories are inconsistent with the holding in a prior decision of this
Court. . . . It bears repeating that even a strong case for relief does not mean the state
court's contrary conclusion was unreasonable."). Finally, a decision cannot be contrary to
or an unreasonable application of Supreme Court precedent unless applicable Supreme
Court precedent exists; without applicable Supreme Court precedent, there is no habeas
relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart
v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597
(7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

### Ground Two

In Ground Two, Petitioner argues the trial court erred by denying Petitioner's
directed verdict motion with respect to the murder, armed robbery, and possession of a
knife during the commission of a violent crime charges because the State failed to produce
any evidence that Petitioner was at the scene of the crime during the commission of the
crime and failed to provide any substantial circumstantial evidence of Petitioner's guilt.

34

[Doc. 1-1 at 5–10.] The Court concludes Petitioner is not entitled to federal habeas corpus relief based upon this allegation.

Petitioner's claim goes to the sufficiency of the evidence. Such a claim is cognizable on collateral review; however, a federal court's review of such claims is "sharply limited." *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998) (quoting *Wright v. West*, 505 U.S. 277, 296 (1992)); *see also Evans-Smith v. Taylor*, 19 F.3d 899, 905 (4th Cir. 1994) ("The standard is obviously rigorous."). "Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review." *Wilson*, 155 F.3d at 405–06 (citing *Wright*, 505 U.S. at 292). When reviewing such a claim, a federal court must consider circumstantial as well as direct evidence and allow the government the benefit of all reasonable inferences from the facts proven to the facts sought to be established, *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982), and when faced with all the evidence that allows conflicting inferences, this Court must presume that the jury resolved such conflicts in the State's favor, *Jackson v. Virginia*, 443 U.S. 307, 326 (1979). Therefore, Petitioner is entitled to relief only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Wilson*, 155 F.3d at 406 (quoting *Jackson*, 443 U.S. at 324)); *see also George v. Angelone*, 100 F.3d 353, 357 (4th Cir. 1996); *Bradley v. State*, No. 04–1278, 2005 WL 3475770 at *6 (D.S.C. Apr. 5, 2005). In *Coleman v. Johnson*, — U.S. —, —, 132 S.Ct. 2060, 2062 (2012) (per curiam), the Supreme Court explained,

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.

35

> A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

A directed verdict is appropriate only when the prosecution presents no evidence whatsoever of one or more elements of the charged offense. *State v. McCluney*, 606 S.E.2d 485, 486 (S.C. 2004); *State v. McLauren*, 563 S.E.2d 346, 351 (S.C. 2002). The trial court may not weigh the sufficiency of the evidence. *McLauren*, 563 S.E.2d at 351. In other words, if the prosecution has presented any evidence of the elements of the charged offense, the case will survive a motion for directed verdict.

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. At trial, the trial judge defined murder as "the willful, felonious killing of a human being by another human being with malice aforethought either express or implied" and defined armed robbery as "the taking of personal property of another from that person's presence or from that person accompanied by force or putting the person in fear of harm-- and with

the intent to steal the property permanently while armed with a deadly weapon."[7]  [App. 2570, 2574.]

In its opinion dismissing Petitioner's appeal, the South Carolina Court of Appeals stated the following:

> After review of the record pursuant to Anders v. California, 386 U.S. 738 (1967) and State v. Williams, 305 S.C. 116, 406 S.E.2d 357 (1991), we dismiss Gary's appeal and grant counsel's petition to be relieved.

[App. 2618–19.]

Based upon a review of the evidence submitted at trial, the Court cannot find that Petitioner has shown that no rational trier of fact could have found him guilty of the charges. The Court can also find no reversible error in the trial judge's refusal to grant a directed verdict based on this testimony and evidence, or in the state court's dismissing the appeal. There was evidence presented at trial that Petitioner was guilty of murder.  The forensic pathologist testified that the victim had a bruise and scratches on her right arm, suffered a fatal cut across the neck, and had cuts on her hands that were consistent with defensive wounds. [App. 1455–57, 1460, 1472.]  Another employee testified that Petitioner and the victim were designated to close the store on the night of the murder.  [App. 1537–38.] Petitioner's girlfriend at the time testified that Petitioner washed his work shirt in the sink of his bathroom and the water turned red and that he left a pair of shoes in her car that appeared to have blood spots on them.   [App. 1586–87, 1622–25.] There was also

---

[7]The Court declines to address Petitioner's argument with respect to his charge of possession of a knife during the commission of a violent crime because this conviction was overturned by the state PCR court.  [App. 2751.]  Petitioner is no longer being held in custody on the basis of this conviction and, thus, is not entitled to federal habeas relief. See 28 U.S.C. § 2254(a).

evidence presented at trial that the blood on a pair of shorts found in Petitioner's room contained the victim's DNA.  [App. 2317–18, 2405–06.]

Regarding the armed robbery charge, there was sufficient evidence of Petitioner's guilt presented at trial to survive a directed verdict motion.  At trial, witnesses testified that a VCR and all of the money from the safe was missing from the store.  [App. 1512–13.] Witnesses further testified that a knife from the store was missing.  [App. 1514–15.] Petitioner's girlfriend at the time testified that she picked Petitioner up from the store on the night of the murder and he came out of the store with a VCR and a knapsack.  [App. 1572–75, 1578–79.] She further testified that Petitioner treated her, his roommate, and his roommate's girlfriend to dinner that night and made several cash purchases the next day. [App. 1591–98.]

Based on a review of the evidence presented at trial, there was evidence presented from which the jury could have found plaintiff guilty of murder and armed robbery.  Thus, the state court's decision was not contrary to, nor an unreasonable application of, clearly established federal law.  Further, it was not based upon an unreasonable determination of facts in light of the state court record.  Accordingly, this ground is without merit and summary judgment should be granted with respect to this issue.

### *Ground Three*

In Ground Three, Petitioner argues trial counsel was ineffective for failing to object to the burden-shifting malice instruction.  [Doc. 1-1 at 11–19.]  The Court finds Petitioner is not entitled to habeas relief on this ground.

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's

holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[8]  *Richter*, 131 S.Ct. at 785.  "A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself."  *Id.*; *see also  Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas").  Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent.  *Id.*

---

[8]In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. at 687. To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Here, the PCR court addressed trial counsel's[9] performances under the standard set forth in *Strickland*. [App. 2743–44.] The PCR court stated,

> Applicant claims trial counsel was ineffective for failing to object to the burden shifting malice instruction; this claim is without merit. <u>Sandstrom v. Montana</u>, 442 U.S. 510 (1979), and its progeny prohibit charging the jury with mandatory presumptions from various situations arising out of a trial. In Applicant's trial, the jury was charged that :

>> Malice may also be inferred or implied. Malice may be implied from the use of a deadly weapon, for instance, a deadly weapon, of course, is any article used to inflict serious bodily injury or death. Malice may be implied when one unlawfully and wrongfully intends to kill another without having been provoked or having seen justifiable reason for the killing. Malice may arise, the law says, if one wrongfully intends to do serious bodily injury to another. Malice may be implied or inferred a depravity of such recklessness or wantonness that it indicates a depravity of the defendant's mind, his or her conscious disregard for human life.

> The jury charge does not require any mandatory presumptions. The trial judge informed the jury that malice **may** be inferred or implied. The key is that the judge did not force the jury to find malice in any given situation but allowed them to imply or infer malice from those situations. The choice to imply or infer was squarely placed on the jury and no mandatory presumption was created. As such, the charge was proper and counsel cannot be held ineffective in failing to object to the charge. Accordingly, this allegation is denied and dismissed.

[*Id.* at 2746–47 (emphasis in original).] The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable

---

[9]Strickler was lead counsel at Petitioner's trial [App. 2742]; however, liberally construing the Petition, it appears that Petitioner is bringing this action against all three attorneys who represented him at trial [*see* Doc. 1-5 at 13 (listing all three trial attorneys).]

Supreme Court precedent.  First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.  The Supreme Court has held that "[a] mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts.  A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." *Francis v. Franklin*, 471 U.S. 307, 314 (1985) (footnote omitted).  Further, "[a] permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved. Such inferences do not necessarily implicate the concerns of *Sandstrom*.  A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Id.* at 314–15.  Accordingly, Petitioner has failed to establish that the PCR court's order was contrary to clearly established Supreme Court precedent.  *See Almon v. United States*, 302 F.Supp.2d 575, 586 (D.S.C. 2004) ("There can be no ineffective assistance of counsel for failing to raise a claim which is not legally viable." (citing *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994); *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999))).  Thus, Petitioner is not entitled to habeas corpus relief on this ground.

### Ground Four

In Ground Four, Petitioner asserts that the state court erred in failing to find counsel ineffective for failing to object when Petitioner was not present for the reading of the jury note.  [Doc. 1-1 at 19–25.]  Petitioner contends that the reading of the note was a critical stage of the proceedings and his presence was required.  [*Id.*]  The Court finds Petitioner is not entitled to federal habeas relief on this ground.

Here, the PCR court addressed trial counsel's performances under the standard set forth in *Strickland.*[10]  [App. 2743–44.]  The PCR court found,

> Applicant's claims counsel was ineffective for failing to object when he was not present at the reading of the note from the jury.  Counsel testified that the note was discussed in the judge's chambers in the presence of all of the attorneys. According to counsel. It was not unusual to consider jury notes in this manner.  Applicant's presence was not required. Counsel's performance was within the range of competence required for criminal practice.  Counsel was not ineffective on this allegation.

[*Id.* at 2745.] The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.  The Supreme Court has held that under the Due Process Clause, "a defendant . . . [has] the right to be present a any stage of the criminal proceedings that is critical to its outcome if his presence

---

[10]For a discussion of the *Strickland* standard, see Ground Three, supra.

would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). However, in the present action, there is no indication that Petitioner's presence would have contributed to the fairness of the proceedings. At the PCR hearing, Strickler testified that it was obvious to him that the attorneys had met with the judge about the note and that if he had objected to the note in any way, he would have made that known on the record. [App. 2675:1–3, 2690:10–12.] Accordingly, the PCR court correctly determined that Petitioner's presence was not required in light of the fact that he was represented during the reading of the note. *See Rushin v. Spain*, 464 U.S. 114, 118 (1983) (holding that a trial judge should generally disclose ex-parte communications relating to an aspect of the trial from the jury to *counsel for all parties* (emphasis added)); *Rogers v. U.S.*, 422 U.S. 35, 41 (1975) (holding that it was prejudicial where the trial judge answered a jury note without notice to or input from *defense counsel* (emphasis added)). Accordingly, Petitioner has failed to show that the PCR court's decision was contrary to clearly established Supreme Court precedent, and, thus, Petitioner is not entitled to habeas corpus relief on this ground.

### *Ground Five*

In Ground Five, Petitioner contends that appellate counsel was ineffective for failing to brief the reasonable doubt issue raised by trial counsel. [Doc. 1-1 at 26–27.] The Court disagrees.

A defendant has a constitutional right to the effective assistance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). To demonstrate ineffective assistance of appellate counsel, a petitioner must satisfy the two-prong test enunciated in

43

*Strickland,* 466 U.S. 668.[11]  *See Williams v. Taylor*, 529 U.S. 362 (2000) (stating that "the *Strickland* test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").  Stated differently, a petitioner must demonstrate "a reasonable probability that, but for his counsel's unreasonable failure . . ., he would have prevailed on his appeal."  *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citation omitted).  There is a "'presumption that [appellate counsel] decided which issues were most likely to afford relief on appeal.'"  *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)).  Moreover, "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal, as 'there can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.'"  *Id.* (quoting *Jones v. Barnes*, 463 U.S. 745, 752 (1983)).

Here, the PCR court evaluated appellate counsel's performance under the *Strickland* standard.  [App. 2743–44.]  The PCR court found,

> A defendant is constitutionally entitled to effective assistance of appellate counsel. Evitts v. Lucy, 469 U.S. 387, 105 S.Ct. 830, 38 L.E.2d 821 (1985).  "However, appellate counsel is not required to raise every non-frivolous issue that is presented by the record." Thrift v. State, 302 S.C. 535, 539, 397 S.E.2d 523 (1990).  Appellate counsel has a professional duty to choose among potential issues according to their merit. Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308 (1983).  Where the strategic decision to exclude certain issues on appeal is based on reasonable professional judgment, the failure to appeal all trial errors is not ineffective assistance of counsel. Griffin v. Aiken, 775 F.2d 1226 (4th Cir. 1985).

---

[11]For a discussion of the *Strickland* standard, see Ground Three, supra.

The applicant must show that appellate counsel's performance was deficient and that he was prejudiced by the deficiency. Thrift, supra, at 537; Anderson v. State, 354 S.C. 431, 581 S.E.2d 834 (2003). When a claim of ineffective assistance of counsel is based upon failure to raise viable issues, the court must examine the record to determine "whether appellate counsel failed to present significant and obvious issues on appeal." Gary v. Greer, 800 F.2d 644, 646 (7th Cir. 1986). Generally, the presumption of effective assistance of counsel will be overcome only when the alleged ignored issues are clearly stronger than those actually raised on appeal. Id.

Appellate counsel submitted a brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), in which the United States Supreme Court announced the procedure an appointed attorney should follow if that attorney believes the client's appeal is frivolous and without merit. 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The Supreme Court held the attorney could petition for permission to withdraw from the case, but that the petition for withdrawal must be accompanied by a brief "referring to anything in the record that might arguably support the appeal." Id. at 744, 87 S.Ct. at 1400, 18 L.Ed.2d at 498. Under Anders, the defendant must be given time to respond and to raise any additional points after his attorney submits the Anders brief. Id. The court is then obligated to conduct a "full examination" of the record to determine whether the appeal is "wholly frivolous." Id. According to Anders, if the reviewing court finds the appeal is frivolous, "it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires." Id. at 744, 87 S.Ct. at 1400, 18 L.Ed.2d at 498. As discussed above, had the appellate court believed that the issue now was meritorious, appellate counsel would have been asked to brief the issue on direct appeal. Pursuant to Anders, Appellate Counsel reviewed the record for alleged errors. Further, Applicant filed his own pro se brief addressing additional points he believed appellate counsel did not raise. The Court then reviewed all of the information submitted and determined that no meritorious issues existed. See State v. Williams, 305 S.C.116, 406 S.E.2d 357 (1991).

(8) The allegation is that appellate counsel was ineffective for failing to raise the issue of whether the trial court

45

erred when it mischarged the jury on reasonable doubt. This claim is without merit. South Carolina law dictates that jury instructions, when analyzed, must be considered in their entirety. See Todd v. State, 355 S.C. 396, 585 S.E.2d 305 (2003). The test for the sufficiency of a jury charge is what a reasonable juror would have understood the charge to mean. State v. Benjamin, 345 S.C. 470, 549 S.E.2d 258 (2001). The record clearly reveals that the jury charge on reasonable doubt was not an impermissible or incorrect charge of the law. Appellate counsel submitted a brief pursuant to Anders v. California, supra. Again had the appellate court believed that the issue was meritorious, they would have asked appellate counsel to brief the issue on direct appeal. Since they did no do so, the issue obviously has no merit. Accordingly, this issue is denied and dismissed.

[App. 2749–50.] The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the appropriate Supreme Court standards. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. There is no indication that appellate counsel's representation was deficient or that Petitioner was prejudiced as a result. While appellate counsel failed to raise the reasonable doubt issue in his brief, Petitioner has failed to show that he was prejudiced as a result. The South Carolina Court of Appeals was obligated under *Anders* to conduct *a full review* of the record to determine whether there were any meritorious issues on appeal. *See Anders*, 386 U.S. at 744. Further, Petitioner raised this issue in his pro se brief on direct appeal, and his pro se brief was a part of the record that the South Carolina Court of Appeals considered when it dismissed Petitioner's appeal. Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent. Therefore, Petitioner

is not entitled to habeas corpus relief on this ground, and Respondent's motion for summary judgment should be granted.

**Motion to Expand the Record**

Petitioner moves to expand the record to include written statements made by witnesses before trial pursuant to Rule 7 of the Rules Governing Section 2254 Cases. [Docs. 45; 43-1.[12]] Section 2254(e)(2) limits a petitioner's ability to expand the record in a federal habeas proceeding. Section 2254(e)(2) provides that if a petitioner has failed to diligently develop his evidence in state court, he may present the evidence in a federal habeas court only if his claim relies on "(1) a new rule of constitutional law, made retroactive to cases on collateral review . . . that was previously unavailable; or (2) a factual predicate that could not have been previously discovered through the exercise of due diligence." "Section 2254(e)(2) limits a petitioner's ability to present new evidence through a Rule 7 motion to expand the record to the same extent that it limits the availability of an evidentiary hearing." *Fielder v. Stevenson*, No. 2:12-cv-00412-JMC, 2013 WL 593657, at *3 (D.S.C. Feb. 14, 2013) (citing *Runningeagle v. Schriro*, 2007 WL 4200743 (D. Ariz. 2007)). The Supreme Court has noted that § 2254(e)(2) "ensure[s] that '[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'" *Cullen v. Pinholster*, ⸺ U.S. ⸺, ⸺, 131 S.Ct. 1388, 1401 (2011) (quoting *Williams v. Taylor*, 529 U.S. 420, 437 (2000)). It would be contrary to the statute's purpose "to allow a petitioner to overcome an

_____

[12]Petitioner's motion to expand the record is located at Docket Entry Number 45; however, Petitioner included the documents he is requesting to add to the record as an attachment to his response in opposition to the motion for summary judgment [Doc. 43-1] and references the documents in his responsive memorandum [Doc. 43 at 2].

adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively de novo." *Id.* at 1399.

Moreover, "[t]he general rule is that a habeas petitioner is entitled to submit new evidence on habeas review only if he can demonstrate that he 'was not at fault in failing to develop that evidence in state court, or (if he was at fault) if the conditions prescribed by § 2254(e)(2) [are] met.'" *Fielder*, 2013 WL, at *4 (quoting *Holland v. Jackson*, 542 U.S. 649, 652 (2004)). To prove that he was not at fault in failing to develop the evidence in state court, the petitioner must demonstrate that he was "diligent," or "made a reasonable attempt, in light of the information available at the time, to investigate and pursue [the evidence] in state court." *Williams*, 529 U.S. at 435. Additionally, "a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 432.

Here, Petitioner presents no evidence that he was not at fault for failing to develop this evidence in state court. Petitioner has not alleged that these witness statements were unavailable to him at trial or during the course of his PCR. Moreover, Petitioner has not alleged that his claim relies upon a new rule of constitutional law made retroactive or upon a factual predicate that could not have been previously discovered. Accordingly, Petitioner's motion to expand the record should be denied.[13]

---

[13]To the extent that Petitioner is attempting to raise any issue in his response in opposition to the motion for summary judgment that was not raised in his Petition [*see* Doc. 43-3 (*e.g.*, response in opposition raises a claim that the trial court erred in denying a motion for mistrial; however, that claim is not included as a ground in the Petition)], the Court will not address these arguments because new matters cannot be raised in a response in opposition to a motion for summary judgment, *see Temple v. Oconee County*, C/A No. 6:13-144-JFA-KFM, 2014 WL 4417702, at *13 (D.S.C. Sept. 8, 2014) (citing *White v. Roche Biomedical Labs,* 807 F.Supp. 1212, 1216 (D.S.C. 1992)).

48

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Petitioner's motion to expand the record be DENIED, Respondent's motion for summary judgment be GRANTED, and the Petition be DENIED.

IT IS SO RECOMMENDED.

S/Jacquelyn D. Austin
United States Magistrate Judge

July 29, 2015
Greenville, South Carolina